UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE RODRIGUEZ,<br>      Petitioner,<br><br>v.<br><br>MCI NORFOLK,<br>      Respondent. | Civil Action No. 04-11894-RGS |

REPORT AND RECOMMENDATION ON PETITION
FOR WRIT OF HABEAS CORPUS

March 6, 2007

SOROKIN, M.J.

On 2004, Jose Rodriguez ("Petitioner") petitioned for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Presently before the court is the petition, and Respondent's opposition thereto.

BACKGROUND

In the early morning of July 7, 1996, Petitioner fatally stabbed Victor Paulino ("Paulino") during an altercation on the beach in Revere, Massachusetts. He was indicted for Paulino's murder, and for assault with a dangerous weapon on Paulino's friend, Geysi Heredia ("Heredia"). The matter was tried before a Suffolk County jury beginning on September 26, 1997. While the Commonwealth argued that the stabbing was deliberate and unjustified, Petitioner argued that he acted inadvertently, in self-defense, and that the facts only justified a conviction for manslaughter.

At trial, the evidence showed that on the night of July 6, 1996, Petitioner was working at

the Cache Club in Lynn. He sat inside a small booth near the door and collected the $7.00 cover charge required for entry into the club. Paulino, also known as "Lefty," tried to enter the club without paying the cover charge, but Rodriguez explained that he needed to pay. Paulino became angry and told Rodriguez that he was going to "break" him, and that "you don't know who I am." Tr. 2-13 to 2-14. Paulino was also heard telling Petitioner that "I can explode you . . . I'll blow you away." Tr. 2-29. Rodriguez asked Paulino to "respect him [because] he was a man." Tr. 2-14. Rodriguez then tried to get out of his booth, but a co-worker prevented him from doing so. The owner of the club then took Paulino inside.

In the early morning hours of the next day, after the club closed, Petitioner and Paulino both ended up at Kelly's Roast Beef in Revere with separate groups of friends. After a discussion while waiting in line,[1] Petitioner and Paulino crossed the street and went onto the beach to fight.

The witnesses presented conflicting testimony with regard to what transpired after the two men went to the beach. Heredia testified that when Petitioner and Paulino walked across the street, he returned to the line to order his food. About ten seconds later, he heard someone scream that Paulino had been stabbed. He ran to the beach and observed Petitioner standing next to Paulino and holding a knife. Petitioner waved the knife at Heredia, and Heredia threw a handful of sand at Petitioner. Heredia chased Petitioner to his car. Tr. 2-76 to 2-83.

Yissell Dilone, Petitioner's girlfriend, testified that she followed the two men to the beach

---

[1] Heredia testified that Petitioner approached Paulino in the line and told him that "he had to respect men," and that they "could resolve it right now and go over there and fight." Tr. 2-73. Petitioner testified that it was Paulino who approached him in line and said, "Now we are on the street." He further testified that Paulino challenged him to a fight after Heredia said, "Take him over to the sand to fight." Tr. 3-205.

2

and observed Paulino swing at Petitioner with his hands. She then observed Petitioner wrap his jacket around his hand and remove a knife from his back pants pocket. Petitioner then stabbed Paulino in the stomach. She saw Heredia throw sand at the Petitioner, and Dilone and Petitioner ran towards their car. Tr. 2-129 to 2-132.

Petitioner, on the other hand, testified that he was attacked by both Paulino and Heredia, and that he merely acted in self-defense against the two aggressors. He stated that he and Paulino placed themselves in a fighting position on the beach, and that Paulino swung at him. Then, Heredia threw a handful of sand at Petitioner. Petitioner said, "Oh, it's both of you," and took out his knife. Tr. 3-206. He started moving the knife back and forth while saying, "Don't come close to me." He was then punched in the chest and felt an impact on his hand. Heredia threw sand at him once more, and Petitioner ran away, and drove off in the car. Tr. 3-204 to 3-207.

Damaris Mercedes, a friend of Dilone's, testified that as she got to the beach, she observed Petitioner and Paulino facing each other in a fighting position, and swinging at each other. She then saw Paulino hold his side and walk back towards the wall. At that point, she saw Heredia approach Petitioner and throw sand at him. Mercedes ran with Petitioner towards the car, and drove him away. Tr. 2- 189 to 2-197. She testified that while in the car, she asked him what happened and he said "that *they* or *he* shouldn't have been messing with him, that *they* came towards him, that *they* were, like going to jump him." Tr. 2-197 (emphasis added).

At that point, the prosecutor tried to refresh Mercedes' recollection by asking her to read the testimony that she gave before the grand jury, wherein she had stated that Petitioner had only referred to "he" and not "they" when he reported that he had been jumped. After several rounds of discussion with counsel, the judge asked Mercedes whether Petitioner said "they should not

3

have been messing with me," or "*he* should not have been messing with me." Mercedes stated, "That's what I don't remember. I don't remember if he said 'he' or 'they.'" Tr. 2-203. The judge then told the prosecutor that he could not use Mercedes' prior statement for impeachment purposes because she testified that she could not remember. Id.

On October 1, 1997, the jury found Petitioner guilty of murder in the second degree. He was acquitted of the charge for assault and battery. He received a life sentence. On October 22, 1997, Petitioner filed a notice of appeal. On October 21, 1999, the Massachusetts Appeals Court affirmed the judgment. See Commonwealth v. Rodriguez, 48 Mass.App.Ct. 1104 (1999)(table). Petitioner filed an application for leave for further appellate review ("ALOFAR"), which the Supreme Judicial Court ("SJC") denied on January 27, 2000. See Commonwealth v. Rodriguez, 430 Mass. 1114(2000)(table). On December 19, 2000, Petitioner filed a motion for a new trial in the Superior Court.

On March 29, 2002, the motion judge, who had also been the trial judge, denied the motion with the following endorsement: "The evidence does not warrant a reduction to manslaughter. I refuse to address any of the other grounds asserted in this motion on the merits, as they have been waived by [Petitioner's] failure to raise them in the original appeal. Motion denied without a hearing." On April 10, 2002, Petitioner appealed this denial, and on May 4, 2004, the Appeals Court affirmed the denial. See Commonwealth v. Rodriguez, 61 Mass.App.Ct. 1102 (2004)(table). Petitioner filed an ALOFAR, which the SJC denied on June 30, 2004.

On August 30, 2004, Petitioner filed the instant petition, asserting the following seven grounds for relief: (1) that he was denied the right to a fair trial because the trial judge admitted a

statement made by Petitioner earlier in the evening that was evidence of a prior bad act; (2) that the prosecutor made an improper comment about Mercedes' testimony during his closing argument; (3) that the judge gave erroneous instructions on manslaughter and reasonable doubt; (4) that the judge gave an unconstitutional instruction on the issue of flight/consciousness of guilt; (5) that the flight instruction shifted the burden of proof to Petitioner; (6) that the flight instruction facilitated a finding of malice founded upon a baseless inference; and (7) that he was denied effective assistance of counsel in violation of the Sixth Amendment when both trial counsel and appellate counsel failed to raise an argument related to the flight instruction.

DISCUSSION

1. <u>Prior Bad Act Evidence</u>  (Ground One)

Petitioner argues that the trial judge erred by allowing a club patron, Yoanne Ledesma, to testify over Petitioner's objection regarding a statement that he made after the initial interaction between Petitioner and Paulino at the club. According to Ledesma, she overheard Rodriguez, one-half hour before the stabbing, say, "One of these days [he] was going to kill one of those guys." Tr. 3-79. According to Petitioner, the introduction of this statement violated his due process right to a fair trial because it was evidence of a prior bad act that was unreliable, irrelevant, and highly prejudicial. He argues that the statement was overheard in a noisy barroom, and may have referred to any of a number of patrons in the club. In addition, he argues that the statement "directly undercut" his assertion that he acted in self-defense. Petitioner's Memorandum at 27.

*Standard of Review*

A federal court is precluded from granting a petition for a writ of habeas corpus unless

the state court decision on the merits of the claim(s) was "contrary to" or an "unreasonable application of" Supreme Court precedent, or an "unreasonable determination" of the facts. See 28 U.S.C. §§ 2254(d)-(e)(1). However, the deference required by AEDPA applies only to claims that were adjudicated on the merits in state court proceedings; otherwise, a federal court must apply *de novo* review. Norton v. Spencer, 351 F.2d 1, 4-5 (1st Cir. 2003). If the state court did not decide the federal constitutional claim, even by reference to state court decisions addressing federal constitutional issues, then the federal court cannot say that the constitution claim was adjudicated on the merits and is thus entitled to deferential review under 28 U.S.C. § 2254(d). DiBenedetto v. Hall, 272 F.3d 1, 6 (1st Cir. 2001). See also Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001). The Appeals Court held,

> The statement was relevant to the question of his intent to kill. See Commonwealth v. Rancourt, 399 Mass. 269, 275 (1987). Whether the statement was directed at the deceased was a question for the jury. The jury could reasonably infer that the defendant was referring to the deceased based upon evidence of the argument earlier that evening, the absence of any other argument in the interim, and the fact that the defendant and the deceased had a similar argument one or two weeks before. See Commonwealth v. Hicks, 22 Mass.App.Ct. 139, 142 (1986).

Commonwealth v. Rodriguez, 48 Mass.App.Ct. 1050 (1999)(table). Because there is nothing in the text of the Appeals Court decision, or the cases cited therein, to indicate that it considered the federal constitutional claim, this court must apply *de novo* review.

*Analysis*

It is important to note that "[h]abeas review does not ordinarily encompass garden-variety evidentiary rulings . . . [t]he federal judiciary holds no roving commission to monitor case by case compliance with the rules of evidence." Palmariello v. Superintendent, 873 F.3d 491, 494

(1st Cir. 1989)(citation omitted). To reach constitutional significance, an alleged error in an evidentiary ruling "must so infuse the trial with inflammatory prejudice as to render a fair trial impossible." Subilosky v. Callahan, 689 F.2d 7, 10 (1st Cir. 1982)(citations and quotations omitted).

Petitioner was not denied his due process right to a fair trial. He has not pointed to any federal law that supports a contention that the admission of the statement "infuse[d] the trial with inflammatory prejudice." Id. To the contrary, the statement was relevant, and members of the jury were entitled to weigh the statement and decide for themselves whether to attach importance to what Petitioner said. Petitioner had the opportunity to offset the impact of the statement by introducing evidence that the club was noisy, and crowded, and that Petitioner did not mention Paulino's name. The petition should be DENIED as to Ground One.

2. <u>Closing Argument</u> (Ground Two)

Next, Petitioner argues that the prosecutor engaged in misconduct when he commented on Mercedes' testimony as follows:

> Is Demaris Mercedes testifying truthfully or is she, too, affected by emotion, not emotion that's going to help her remember things vividly, but make her memory a little too convenient? Her testimony was that the day before this trial started she went to see the defendant, her friend. Is it possible that she changes her memory slightly to help a friend from 'he' to 'they'? Is it likely that's what's going on? Is she [sic] feels sorry for her friend who, as she says, the only thing they discussed was the situation he was in? Of course she feels sorry for her friend. And, unfortunately, I submit to you, ladies and gentlemen, it affected her testimony.

Tr. 4-49 to 4-50.

*Standard of Review*

The Appeals Court ruled that there was no error because the "prosecutor's argument was

a fair comment based on the witness' testimony [citation to two state decisions]." Commonwealth v. Rodriguez, 48 Mass.App.Ct. 1050. Because there is nothing in the Appeals Court decision to indicate that it considered the federal constitutional claim, this court must apply *de novo* review.

*Analysis*

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). The "relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). The determination of whether a prosecutor's comments "so poisoned the well" as to require a new trial is made by weighing the severity of the misconduct, the context in which the comment was made, whether the judge gave any curative instruction, and the strength of the evidence against the defendant. See United States v. Rodrigues-DeJesus, 202 F.3d 482, 486 (1st Cir. 2000).

Here, there simply was no prosecutorial misconduct. Mercedes testified that Petitioner told her that "they" jumped him. Tr. 2-193. When asked by the court for clarification on the point of whether Petitioner reported that it was one person ("he"), or more than one person ("they") who jumped him, Mercedes testified that she could not remember. Tr. 2-203. Based on this testimony, it was perfectly reasonable for the prosecutor to comment on her lack of memory, and to urge the jury to consider that fact when conducting its deliberations. Accordingly, I recommend that the Petition be DENIED as to Ground Two.

3. <u>Jury Instructions on Manslaughter and Reasonable Doubt</u> (Ground Three)

Petitioner challenges the portion of the judge's instruction on manslaughter[2] that referred to an "abnormal state of mind." He argues that the jury may have concluded that he used excessive force in self-defense - - thereby warranting a manslaughter verdict - - but unfairly convicted him of murder because he did not have an abnormal state of mind. In addition, Petitioner challenges the judge's directives that "mere insulting words and threatening gestures, alone, with nothing else do not constitute adequate provocation to reduce a killing from murder to manslaughter," Tr. 4-81, and that "relative to provocation, a person may not lawfully use force to defend himself because of reproachful words or name calling, regardless of how indecent or unjustifiable those words may be. You may consider evidence of any threats of violence made by Victor Paulino against the defendant when you consider the issue of reasonable provocation." Tr. 4-92. Petitioner argues that words alone <u>may</u> constitute adequate provocation depending on their content. The Appeals Court reviewed the manslaughter instruction and found that there was no error. The Court noted that it based its conclusion on the state law cases cited by the

---

[2] The judge stated that voluntary manslaughter is "an unlawful, intentional killing resulting from a sudden transport of the passions of fear, anger, fright, nervous excitement, or heat of blood, heat of blood produced by adequate or reasonable provocation and without malice or upon sudden combat that would have been likely to produce in an ordinary person an abnormal state of mind and actually did produce such a state of mind in Mr. Rodriguez. The law provides for the crime of manslaughter in recognition of the frailty of human nature. If a person kills another in the heat of passion which is occasioned by adequate and reasonable provocation or in sudden combat and even though that person had an intention to kill, the killing is designated manslaughter, not murder, because of the mitigating circumstances. In order to prove the defendant guilty of voluntary manslaughter, the Commonwealth must prove three elements beyond a reasonable doubt, first, that the defendant, Mr. Rodriguez, inflicted an injury upon Victor Paulino from which Mr. Paulino died; secondly, that the defendant, Mr. Rodriguez, injured Mr. Paulino as a result of a sudden combat or in the heat of passion or by using excessive force in self-defense . . . thirdly, that the homicide, the killing, was committed unlawfully without legal excuse or justification." Tr. 4-80 to 4-81.

Commonwealth in its opposition brief. Commonwealth v. Rodriguez, 48 Mass.App.Ct. at 1050.

With regard to the reasonable doubt instruction, Petitioner challenges the judge's statement that reasonable doubt "is not mere possible doubt because everything relative to human affairs and depending upon evidence is open to some possible or imaginary doubt . . . The Commonwealth does not have to prove the case to a mathematical certainty, to an absolute certainty; but the Commonwealth must prove each and every element of the charge beyond a reasonable doubt." Tr. 4-62 to 4-63. Petitioner argues that this diluted the prosecution's burden of proof in violation of due process. The Appeals Court ruled that the reasonable doubt instructions were in accordance with Massachusetts law and federal constitutional principles. 48 Mass.App.Ct. at 1050.

*Standard of Review*

Because the Appeals Court considered the federal claims raised in Ground Three on the merits, AEDPA's deferential standard of review applies. Under this standard, a federal court is precluded from granting a petition for a writ of habeas corpus unless the state court decision was "contrary to," or an "unreasonable application of," Supreme Court precedent, or an "unreasonable determination" of the facts. 28 U.S.C. §§ 2254(d)-(e)(1).

However, a federal court can not reexamine state court determinations of state law questions. See Lewis v. Jeffers, 497 U.S. 764, 780-781 (1990). The Appeals Court reviewed Petitioner's challenges to the jury instructions and determined that they comported with Massachusetts law. Accordingly, habeas relief is only available to Petitioner upon a showing that an "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991).

Petitioner has not shown that the manslaughter instruction violates constitutional principles. He argues that the he is entitled to habeas relief because "there was testimony from numerous witnesses concerning statements by Paulino which, unquestionably, could constitute adequate provocation, including Paulino's threats to 'break' [Petitioner] and 'explode' or 'blow him away.'" Petitioner's Memorandum at 35.  As previously noted, the trial judge specifically addressed this point in his instructions when he told the jury, "you may consider evidence of any threats of violence made by Victor Paulino against the defendant when you consider the issue of reasonable provocation." Tr. 4-92.   That the jury did not find that Paulino's statements were adequate provocation does not render Petitioner's trial unfair.  He is not entitled to relief based upon a faulty manslaughter instruction.

With regard to the reasonable doubt instruction, Petitioner relies on Cage v. Louisiana, 498 U.S. 39, 40 (1990), wherein the Supreme Court considered a challenge to a reasonable doubt instruction that stated, "what is required is not an absolute or mathematical certainty, but a moral certainty." Petitioner's reliance on Cage is misplaced.  The Supreme Court did not find a problem with the terms "absolute" or "mathematical certainty."  Rather, the Court ruled that "[i]t is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard.  When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it  becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." Id. at 41.   There is simply nothing in the judge's instruction that could be construed to suggest that a finding of guilt could be based in a degree of proof below that

required by the Due Process clause. Indeed, the instruction was nearly verbatim from Commonwealth v. Webster, 5 Cush. 295, 320 (1850), the relevant portion of which has been cited with approval by the Supreme Court. Victor v. Nebraska, 511 U.S. 1, 9, citing Perovich v. United States, 205 U.S. 86, 92 (1907). Accordingly, I recommend that the petition be DENIED as to Ground Three.

    4. Jury Instructions on Flight/Consciousness of Guilt and Ineffective Assistance of Counsel   (Grounds Four through Seven)

In Grounds Four through Six, Petitioner argues that the trial judge's instruction on flight/consciousness of guilt violated his Fifth Amendment right to be free from self incrimination, shifted the burden to him by compelling him to disprove malice, and facilitated a finding of malice founded on a baseless inference. Related to those claims, Petitioner argues in Ground Seven that he was denied his Sixth Amendment right to effective assistance of trial and appellate counsel. He argues that trial counsel's performance was constitutionally defective for his failure to object to the judge's flight instruction and that, in turn, appellate counsel (who was different than trial counsel) was ineffective for failing to raise the issue on direct appeal. Petitioner, represented by yet another attorney, raised both of these issues in his motion for a new trial, which the judge denied.

The Appeals Court, in affirming the trial judge's denial of Petitioner's motion for a new trial, ruled that

> all of the issues have been waived (R. 5), since they could have been presented in the direct appeal and were not. Even if there was error in the consciousness of guilt instruction, a proposition of doubtful validity, our review of the record indicates that there was no substantial risk of a miscarriage of justice. Commonwealth v. Curtis, 417 Mass. 619, 623-626 (1994). There is correspondingly no possible claim for ineffective assistance of counsel. Id. at

624-625 n. 4.

Commonwealth v. Rodriguez, 61 Mass.App.Ct. at 1102 (2004)(table).

Federal courts can not review state court decisions which rest on "independent and adequate state ground[s]." Simpson v. Matesanz, 175 F.3d 200, 205 (1st Cir. 1999), quoting Trest v. Cain, 522 U.S. 87 (1997). Procedural defaults constitute an adequate and independent state ground only if a state procedural rule is "consistently or regularly applied." Johnson v. Mississippi, 486 U.S. 578, 588-589 (1988). Because the SJC regularly enforces the rule that a claim not raised is waived, see Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002) (collecting state cases), Petitioner is procedurally defaulted from raising Grounds Four through Seven.

Petitioner argues that the Appeals Court noted the waiver issue, but then proceeded to address the claim on the merits when it conducted an analysis for a substantial miscarriage of justice. Therefore, he argues, there is no bar to federal habeas review. This argument is of no avail. Because the Appeals Court provided a clear and express statement of waiver, its additional review for a substantial risk of a miscarriage of justice does not constitute a "good reason" to question whether there is an independent and adequate state ground for its ruling. See Coleman v. Thompson, 501 U.S. 722, 739 (1991). See also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative holding* . . . as long as the state court explicitly invokes a separate basis for decision.")

Petitioner states that pursuant to Massaro v. United States, 538 U.S. 500, 504 (2003), ineffective assistance of counsel claims initially raised in a first and proper post-conviction proceeding can not be deemed waived. Petitioner's reliance on this case does not assist his argument, as the Supreme Court in Massaro considered post-conviction proceedings in a federal

context. Here, the Appeals Court explicitly found waiver based on Massachusetts law. As previously noted, a federal court may not reexamine state court determinations of state law questions. See Lewis v. Jeffers, 497 U.S. at 780-781. Accordingly, Petitioner has procedurally defaulted Grounds Four through Six and Ground 7 as to *trial* counsel's ineffectiveness.

In the event that a state court finds procedural default, federal habeas review is barred unless the Petitioner can show either (1)"cause" and "actual prejudice" for his procedural default, or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To satisfy the cause element, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To support a finding of a fundamental miscarriage of justice, Petitioner must argue "actual innocence". This is a narrow exception. "It suffices if the petitioner can show a probability that a reasonable jury would not have convicted but for the constitutional violation." Id. at 496. Here, Petitioner has neither shown cause and prejudice, nor actual innocence, to excuse his procedural default.[3]

The claim for ineffective assistance of appellate counsel in Ground 7 fails as well. That the Appeals Court referred only to Petitioner's claim of ineffectiveness of *trial* counsel, and did

---

[3]To the extent that his claims for ineffective assistance of counsel could be interpreted as an argument in support of cause for Petitioner's failure to raise objections to the flight instruction, Petitioner can not demonstrate the requisite prejudice. The Appeals Court reviewed the record and found that the consciousness of flight instruction did not pose a risk of a substantial miscarriage of justice. The Court cited to Commonwealth v. Curtis, 417 Mass. 619, 624-625 n. 4 (1994) which noted that, "the federal standard in deciding the seriousness of the harm caused by counsel's error differs little, if at all from the standard of a substantial risk of a miscarriage of justice. See Strickland v. Washington, 406 U.S. 668, 694 (1984). . . The standard that this court has used for testing the ineffectiveness of counsel, in a constitutional sense, is at least as favorable to a defendant as is the Federal standard. . ." Therefore, there was no prejudice to Petitioner.

not specifically mention the clam as it pertained to *appellate* counsel, is of no import. The Court's finding that there was no substantial risk of a miscarriage of justice due to trial counsel's performance, necessarily commands the same conclusion with regard to appellate counsel's performance where the alleged error is appellate counsel's failure to raise the issue of trial counsel's deficiency. Accordingly, I recommend that the petition be DENIED as to Grounds Four, Five, Six, and Seven.

## CONCLUSION

For the foregoing reasons, this Court recommends to the District Judge to whom this case is assigned that the Petition be DENIED. [4]

/s/ Leo T. Sorokin

_____

United States Magistrate Judge

---

[4] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 10 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also, Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).